### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Student **DOE # 1** | |
| Student **DOE # 2** | |
| Student **DOE # 3** | Case No: 1:25-cv-4188 |
| Student **DOE # 4** | |
| Student **DOE # 5** | |
| Student **DOE # 6** | ***Complaint for Declaratory Judgment and*** |
| Student **DOE # 7** | ***Injunctive Relief*** |
| Student **DOE # 8** | |
| | |
| Plaintiffs, | |
| | |
| v. | |
| | |
| **Donald J. TRUMP**, *in his official capacity as President of the United States;* | |
| | |
| **U.S. Department of Homeland Security**, Executive Agency; | |
| | |
| **Kristi NOEM,** *in her official capacity as Secretary of the United States Department of Homeland Security*; | |
| | |
| **Todd LYONS,** *in his official capacity, Acting Director, Immigration and Customs Enforcement,* | |
| | |
| Defendants. | |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.     On the cusp of graduation season—just as students across the country were preparing to complete degrees, begin new academic programs, or start employment, the Department of Homeland Security ("DHS") abruptly terminated the legal status of hundreds, if not thousands,

of international students. Without advance notice or explanation, DHS summarily terminated student records in the Student and Exchange Visitor Information System ("SEVIS") database. The consequences were immediate and devastating: students were forced to withdraw from classes, leave jobs, and consider abandoning the education and careers that they came to the United States to pursue.

2.      The eight Plaintiffs in this case are international students whose SEVIS records were terminated without due process, legal justification, or individualized review. Some were accused of minor traffic infractions, while others were accused of minor criminal infractions. At least one Plaintiff believes his SEVIS record was terminated due to an encounter with immigration officials at an airport. Regardless of the circumstances, all were stripped of their lawful status, barred from continuing their studies or employment, and now face the threat of detention, deportation, and the erasure of years of lawful presence and academic achievement. Defendants' actions were not authorized by statute or regulation, nor were they carried out with any semblance of due process.

3.      As such, these actions violate the Administrative Procedure Act ("APA") because they are arbitrary, capricious, and contrary to law. They also violate the Fifth Amendment by depriving Plaintiffs of constitutionally protected interests without notice or opportunity to be heard.

4.      Plaintiffs seek a declaratory judgment setting aside the unlawful SEVIS terminations, and request immediate injunctive relief to prevent further irreparable harm.

## **JURISDICTION**

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which grants original jurisdiction over all civil actions arising under the Constitution, laws, or

treaties of the United States. Plaintiffs bring claims under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and the Due Process Clause of the Fifth Amendment to the United States Constitution. Jurisdiction is further supported by 28 U.S.C. § 1346, which provides jurisdiction over civil actions against the United States, its agencies, or its officers acting in their official capacities.

6.      This Court also has authority to issue declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and its own inherent equitable powers. Defendants have waived sovereign immunity for such claims under 5 U.S.C. § 702, which permits judicial review of final agency action where a plaintiff has suffered a legal wrong or been adversely affected by agency action.

## VENUE

7.      Pursuant to 28 U.S.C. § 1391(e), venue is proper in the Northern District of Illinois because Plaintiff Student Doe #7 resides in this District. Section 1391(e) provides that in a civil action in which a defendant is an officer or employee of the United States acting in their official capacity, venue is proper in "any judicial district in which the plaintiff resides if no real property is involved in the action."

8.      Only one properly joined plaintiff needs to reside in the district for venue to be proper. *See Standard Oil Co. v. Fed. Trade Comm'n.*, Civil No. H 78-485, 1979 U.S. Dist. LEXIS 13434 at *2 (N.D. Ind. Mar. 28, 1979). There is no real property at issue in this case.

## JOINDER

9.      Joinder of Plaintiffs is proper under Federal Rule of Civil Procedure 20(a)(1). Plaintiffs assert claims that arise out of the same series of transactions, occurrences, or events—namely, the unlawful and nationwide termination of SEVIS records by Defendants in or around April

3

2025. These terminations were based on similar or identical grounds, carried out through the same government systems and policies, and resulted in nearly identical injuries across Plaintiffs, including the loss of lawful immigration status, disruption of education and employment, and the imminent risk of detention and removal, among numerous other adverse consequences.

10.     Plaintiffs' claims also involve common questions of law and fact, including but not limited to:

- Whether Defendants acted within the scope of their legal authority under 8 C.F.R. §§ 214.1(d) and (e);

- Whether the SEVIS terminations violated Plaintiffs' rights under the Due Process Clause of the Fifth Amendment;

- Whether Defendants failed to provide adequate notice and opportunity to be heard prior to terminating lawful student status; and

- Whether the SEVIS terminations must be set aside under the Administrative Procedure Act as arbitrary, capricious, or contrary to law.

11.     Permissive joinder will promote judicial efficiency, avoid unnecessary duplication of proceedings, and ensure consistent adjudication of these shared legal and factual issues. Accordingly, joinder of Plaintiffs in this action is appropriate and warranted.

## PARTIES

### A. Plaintiffs[1]

12.     **Student Doe #1** is a resident of Indiana who, prior to the termination of his SEVIS record, maintained valid F-1 student status throughout the completion of his degree and

---

[1] Plaintiffs fall into one of three categories based on the government's apparent basis for SEVIS termination:
(1) Traffic or driving-related allegations (Student Does #1–4)
(2) Non-criminal immigration history (Student Doe #5)
(3) Minor criminal conduct (Student Does #6–8)
*See* Exhibit A: Exhibit A: Plaintiffs' SEVIS Termination Reference Sheet

4

post-graduation employment. In April 2025, his SEVIS record was terminated and his visa revoked based on a prior traffic citation. As a result, he was placed on unpaid leave from his job, lost lawful status, and now faces serious immigration consequences.

13.     **Student Doe #2** is a resident of New York who, prior to the termination of his SEVIS, maintained valid F-1 student status while pursuing a graduate degree. In April 2025, his SEVIS record was terminated and his visa revoked following a misunderstanding involving vehicle documentation. As a result, he is unable to begin a planned internship, lost lawful status, and now faces serious immigration consequences. Most severely, he is deeply concerned about his ability to care and provide for his wife and their newborn child.

14.     **Student Doe #3** is a resident of Illinois who entered the United States on a student visa and maintained valid F-1 student status while pursuing a graduate degree. In April 2025, his SEVIS record was terminated based on a previously resolved minor offense. As a result, he was removed from his university position, lost lawful status, and now faces serious immigration consequences.

15.     **Student Doe #4** is a resident of Indiana who, prior to the termination of his SEVIS, maintained valid F-1 student status throughout the completion of his degree. In April 2025, his SEVIS record was terminated and his visa revoked, possibly due to a traffic-related citation. As a result, he was unable to begin OPT employment, lost lawful status, and now faces serious immigration consequences.

16.     **Student Doe #5** is a resident of North Carolina who, prior to the termination of his SEVIS, maintained valid F-1 student status throughout the completion of his degree and post-graduation work authorization. In April 2025, his record was terminated without explanation, allegedly based on a prior SEVIS issue that had already been resolved. As a result,

he was placed on unpaid leave from his job, lost lawful status, and now faces serious immigration consequences.

17.     **Student Doe #6** is a resident of Texas who, prior to the termination of his SEVIS, maintained valid F-1 student status throughout post-graduate employment under OPT and STEM OPT. In April 2025, his SEVIS record and visa were revoked based on a dismissed public conduct citation. As a result, he was placed on unpaid leave from his job, lost lawful status, and now faces serious immigration consequences.

18.     **Student Doe #7** is a resident of Chicago, Illinois who, prior to the termination of her SEVIS, maintained valid F-1 student status while completing her degree and working under CPT authorization. In April 2025, her SEVIS record was terminated based on a dismissed retail theft allegation. As a result, she is unable to complete her academic program, lost lawful status, and now faces serious immigration consequences.

19.     **Student Doe #8** is a resident of Texas who, prior to the termination of her SEVIS, maintained valid F-1 student status through the completion of her degree and post-graduation employment. In April 2025, her SEVIS record was terminated based on unresolved allegations of retail theft. As a result, she lost her job, lost lawful status, and now faces serious immigration consequences.

   **B. Defendants**

20.     **Defendant Donald J. Trump** is the President of the United States and is sued in his official capacity. As President, he is responsible for the execution and oversight of federal immigration law, including the actions of subordinate agencies such as the Department of Homeland Security and Immigration and Customs Enforcement.

21. **Defendant U.S. Department of Homeland Security ("DHS")** is an executive agency of the federal government charged with administering and enforcing the immigration laws of the United States, including the maintenance of the SEVIS database. DHS is a proper defendant under the Administrative Procedure Act, 5 U.S.C. § 702.

22. **Defendant Kristi Noem** is the Secretary of DHS and is sued in her official capacity. As Secretary, she has ultimate authority over DHS operations, including the Student and Exchange Visitor Program (SEVP), and is responsible for the policies and enforcement actions at issue in this case.

23. **Defendant Todd M. Lyons** is the Acting Director of Immigration and Customs Enforcement ("ICE") and is sued in his official capacity. ICE oversees the SEVP, which maintains the SEVIS system. Defendant Lyons is responsible for the administration and enforcement of SEVIS-related policies that led to the termination of Plaintiffs' records.

## STATUTORY AND REGULATORY BACKGROUND

24. Under the Immigration and Nationality Act ("INA"), noncitizens may enroll in government-approved academic institutions as F-1 students. *See* 8 U.S.C. § 1101(a)(15)(F).

25. Many students enter the United States on an F-1 visa applied for through embassies and consulates abroad and issued by the U.S. Department of State. Issuance of an F-1 student visa governs a student's *entry* into the United States, not their continued lawful presence.[2]

26. Upon admission into the United States with an F-1 visa, students are granted F-1 student status and permitted to remain in the United States for the "duration of status" ("D/S"), provided they continue to comply with the requirements established by the regulations governing the student's visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment.

---

[2] Plaintiffs do not challenge the revocation of their F-1 visas in this case.

27.     As noncitizens, F-1 students are "subject to an array of regulations." *See Jie Fang v. Director U.S. Immigration & Customs Enforcement*, 935 F.3d 172, 185 n.100 (3d Cir. 2019) (citing 8 C.F.R. § 213.2(f)). "These include maintaining a full course of study[.]" *Id*. (citing 8 C.F.R. § 214.2(f)(6)), and complying with requirements governing employment authorization and program transfers.

28.     Students may also participate in "two types of practical training programs." *Id*. (citing 8 C.F.R. § 214.2(f)(10)(ii)). "Curricular Practical Training ("CPT") includes any 'alternative work/study, internship, cooperative education, or any other type of required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school' that is an 'integral part of an established curriculum.'" *Id*. (quoting 8 C.F.R. § 214.2(f)(1)(i)).  CPT usually occurs during the course of study and before its completion.

29.     "The other is Optional Practical Training ('OPT') which consists of temporary employment that is 'directly related to the student's major area of study.'" *Id*. (quoting 8 C.F.R. § 214.2(f)(1)(ii)).  OPT typically occurs after completion of the academic program.

30.     "Once a student has completed his or her course of study and any accompanying practical training, he or she has sixty days to either depart the United States or transfer to another accredited academic institution and seek a transfer of the F-1 visa." *Id*. (citing 8 C.F.R. § 214.2(f)(5)(iv)).  "If a student voluntarily withdraws from the F-1 program, he or she has fifteen days to leave the United States." *Id*. "A student who 'fails to maintain a full course of study without the approval of the DSO or otherwise fails to maintain status' must depart the United States immediately or seek reinstatement." *Id*. (quoting 8 C.F.R. § 214.2(f)(5)(iv)).

31.     The Student and Exchange Visitor Information System ("SEVIS") is a centralized database maintained by the SEVP within ICE. It is used to track international students and

exchange visitors and to monitor their compliance with the terms of their nonimmigrant status. Under 8 C.F.R. § 214.3(g)(2), Designated School Officials ("DSOs") are required to report through SEVIS when a student fails to maintain status, which can result in termination of the SEVIS record.

32.     SEVIS termination is governed by SEVP policy and regulations.

33.     The regulations distinguish between two separate ways a student may fall out of status: (1) a student who "fails to maintain status"; and (2) an agency-initiated "termination of status."

34.     The first category, failure to maintain status, involves circumstances where a student voluntarily or inadvertently falls out of compliance with the F-1 visa requirements—for example, by failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their status requirements under 8 C.F.R. § 214.2(f).

35.     In addition, 8 C.F.R. §§ 214.1(e)–(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitutes a failure to maintain status."

36.     With the respect to the crime of violence category, 8 C.F.R. § 214.1(g) sets forth that a nonimmigrant's conviction "for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status . . . ." Minor misdemeanor offenses do not meet this threshold for termination based on criminal history. The Supreme Court of the United States has held that a crime of violence "means 'an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" *Borden v. United States*, 593 U.S. 420, 427 (2021).

37.     The second category, termination of status by ICE, can occur only under the limited circumstances set forth in 8 C.F.R. § 214.1(d), which only permits ICE to terminate status when: (1) a previously granted waiver under INA § 212(d)(3) or (4) [ 8 U.S.C. § 1182(d)(3) or (4)] is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) ICE publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. ICE cannot otherwise unilaterally terminate nonimmigrant status.

38.     Accordingly, the revocation of a visa does not constitute failure to maintain status and cannot therefore be the basis for SEVIS termination. If a visa is revoked prior to a student's entry into the United States, then a student may not enter the country and the SEVIS record is terminated. However, once admitted, visa revocation does not terminate status or authorize SEVIS termination, because the student is permitted to continue the authorized course of study. *See* ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.

39.     ICE's own guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." *Id*. Rather, students may continue their authorized course of study. If they leave the United States, the SEVIS record is terminated upon departure, and the student must obtain a new visa before returning. *See* Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).

40.     While a visa revocation can be charged as a ground of deportability in removal proceedings, deportability can be contested in such proceedings. *See* 8 USC § 1227(a)(1)(B); 8 U.S.C. § 1201(i) (allowing immigration court review of visa revocation).

41.    The immigration judge may dismiss removal proceedings even where a visa is revoked, so long as a student is able to remain in valid status. 8 C.F.R. § 1003.18(d)(ii)(B).

42.    Only when a final removal order is entered would status be lost. *See* 8 U.S.C. § 1252(a)(1) (General Orders of Removal); 8 C.F.R. § 1241.1 (Final Order of Removal).

43.    A student who has not violated their F-1 status, even if their visa is revoked, cannot have a SEVIS record terminated based on INA § 237(a)(1)(C)(i) [8 U.S.C. § 1227(a)(1)(C)(i)] (failure to maintain status), INA §237(a)(4)(C)(i) [8 U.S.C. § 1227(a)(4)(C)(i)] (foreign policy grounds), or any deportability ground for that matter. *See* 8 C.F.R. § 214.1(d) (establishing the three limited circumstances under which DHS can terminate status).

44.    The immigration courts have no ability to review the SEVIS termination here because the process is collateral to removal. *See Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995, 1007 (9th Cir. 2024); *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 183 (3d Cir. 2019).

45.    DHS's own public-facing guidance confirms that a SEVIS termination is tantamount to a loss of F1 status.

46.    On its "Study in the States" website, DHS explains that when a SEVIS record is terminated, the student must either seek reinstatement, thereby acknowledging a violation of status, or depart the United States.[3]

## FACTUAL BACKGROUND

### A.  The International Student Crisis

47.    In April 2025, the U.S. government, principally through the Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), and the Department of

---

[3]    U.S. Dep't of Homeland Sec., *Terminate a Student*, Study in the States (Nov. 7, 2024), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student.

State—initiated an unprecedented and sweeping campaign of student visa revocations and SEVIS terminations, destabilizing the lives of hundreds of international students and throwing universities across the country into a state of legal, political, and administrative crisis.[4]

48.     Reports from national and local media confirm that over 1,000 international students across more than 180 institutions—including numerous universities in Illinois—lost their legal status in the span of mere weeks, often without prior notice, meaningful explanation, or opportunity to contest the decision.[5] These terminations were frequently triggered by minor infractions, such as dismissed traffic tickets,[6] or—in the most egregious cases—no discernible misconduct at all.



### International Student Visas Revoked

As of April 16, over 210 colleges and universities have identified 1,300-plus international students and recent graduates who have had their legal status changed by the State Department.

Source: Inside Higher Ed analysis, Ashley Mowreader/Inside Higher Ed • Some institutions have shared publicly that students have lost visas but have yet to disclose the number of students impacted. These are documented on the map, but the number is unknown. A number with an asterisk indicates a positive change in the count, such as a visa reinstatement.
Download this data

---

[4] Annie Ma, Makiya Seminera & Christopher L. Keller, *Visa Cancellations Sow Panic for International Students, with Hundreds Fearing Deportation*, AP News (Apr. 16, 2025), https://apnews.com/article/international-student-f1-visa-revoked-college-f12320b435b6bf9cf723f1e8eb8c67ae.
[5] *Id.*; Rafael Romo, *New Lawsuit Alleges Traffic Stops, Dismissed Cases Used as Criteria to Revoke Student Visas*, CNN (Apr. 16, 2025), https://www.cnn.com/2025/04/16/us/international-visa-revocations-traffic-stops/index.html.
[6] Romo, *supra* note 2.

49. Unlike prior agency practice, which involved some level of coordination with Designated School Officials (DSOs) or institutional administrators, these revocations were executed directly through SEVIS.[7] The lack of transparency and procedural safeguards created chaos within educational institutions and upended the lives of lawful F-1 visa holders. Universities scrambled to understand their responsibilities and whether they were authorized to assist affected students by reissuing I-20s or intervening with DHS.[8]

50. In Illinois, the impact was particularly severe. Widespread terminations at universities in the state prompted public outrage and condemnation. Educational institutions and state officials expressed alarm over the sudden loss of legal status for numerous international students.[9] Governor J.B. Pritzker publicly condemned the federal actions, highlighting the devastating effects on the state's academic community and the well-being of its students.[10]

51. Upon information and belief, the Trump Administration has adopted a policy of coercing international students into self-deportation by leveraging ambiguous visa revocation notices and threatening language, rather than affording affected individuals constitutionally or statutorily guaranteed procedures. Students have reported being pulled from classrooms, subjected to immigration enforcement during routine traffic stops, or left in legal limbo while awaiting instructions from their schools or ICE.[11]

---

[7] U.S. Dep't of Homeland Sec., *Terminate a Student*, Study in the States (Nov. 7, 2024), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student.
[8] As one administrator put it, "The rules are changing beneath our feet." Emma Whitford, *How Trump Is Wreaking Havoc on the Student Visa System*, Inside Higher Ed (Apr. 3, 2025), https://www.insidehighered.com/news/global/international-students-us/2025/04/03/how-trump-wreaking-havoc-student-visa-system.
[9] Jackson Brandhorst et al., *'Chilling Silence': Waves of Illinois' International University Students Lose Their Visas*, Capitol News Ill. (Apr. 10, 2025), https://capitolnewsillinois.com/news/chilling-silence-waves-of-illinois-international-university-students-lose-their-visas.
[10] *Id.*
[11] Romo, *supra* note 2; Prem Thakker, *ICE Revoking Students' Immigration Statuses Without Their or the University's Knowledge*, Zeteo (Mar. 30, 2025), https://zeteo.com/p/ice-manually-revoking-university-students-residency-status-middle-east.

52.     In numerous cases, including those of named Plaintiffs, students received nearly identical emails from the U.S. Department of State stating that their F-1 visas had been revoked. These emails included language warning:

> "Remaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin. Given the gravity of this situation, individuals whose visa was revoked may wish to demonstrate their intent to depart the United States using the CBP Home App."

53.     This language, sent without prior individualized notice or hearing, has caused panic among students who fear ICE detention, removal, or being sent to third countries with no notice.[12]

54.     Mass litigation has since ensued nationwide. Federal courts across the nation have issued emergency temporary restraining orders to halt removal proceedings, reinstate SEVIS records, or require the government to explain the basis for revocation.[13] The harms to students—academic disruption, mental trauma, reputational damage, and the risk of permanent exclusion from the United States—have been well documented in these court filings and news reports.[14]

55.     Upon information and belief, the federal government's mass revocation and termination campaign has disproportionately targeted international students from majority-Muslim, African, and Asian countries.[15]

---

[12] AP News, *supra* note 1.
[13] PBS NewsHour, *Visa Cancellations and Deportations Sow Panic for International Students*, PBS (Apr. 16, 2025), https://www.pbs.org/newshour/politics/visa-cancellations-and-deportations-sow-panic-for-international-students.
[14] *Id.*; Inside Higher Ed, *supra* note 7.
[15] Thakker, *supra* note 11.

56.     These events are not isolated incidents, but part of a deliberate and unlawful campaign targeting vulnerable international students—students who came to the United States in pursuit of education, and now find themselves punished without process, protection, or cause.

### B. Harms to Plaintiffs

57.     Overnight, Plaintiffs lost everything they had built in the United States. Degrees earned, jobs secured, and futures planned were upended without warning.

58.     One day they were students, interns, and skilled professionals; the next, they were terminated, locked out of systems, and told to prepare to leave the country.

59.     These abrupt terminations disrupted not just immigration status, but their entire lives. Plaintiffs lost income, housing, health insurance, academic standing, and access to vital opportunities.

60.     The emotional toll has been profound—fear, anxiety, and physical illness now mark what should have been a season of celebration and transition.

### *Student Doe #1*

61.     Student Doe #1 pursued a master's degree in information science and graduated with a 3.83 GPA. After graduation, he began working under STEM OPT and was recently selected in the H-1B lottery. On April 10, 2025, his SEVIS record was terminated without explanation, requiring him to stop working and placing his academic and professional future in jeopardy. His wife gave birth to their first daughter just days later, on April 13, 2025.

62.     Student Doe # 1 is experiencing severe anxiety and distress, especially as his wife gave birth just days later. As the sole provider for his family, and having gone into debt to study in the U.S. to study in the U.S., he now faces unpaid leave, the loss of H-1B eligibility, and fears detention, family separation, and the inability to support his newborn child.

63.    Upon information and belief, the SEVIS termination may relate to a 2023 reckless driving charge, which he states arose from unintentionally driving 70 mph in a 45 mph zone. He reports that he complied fully with the court's instructions, including completion of a driving safety course and payment of a $10 fine.

64.    Instead of celebrating the birth of their daughter, they now face financial insecurity and the looming threat of deportation.

***Student Doe #2***

65.    Student Doe #2 is currently pursuing a master's degree in pure mathematics with a 3.88 GPA. He was actively competing for a lucrative internship this summer. On April 10, 2025, his SEVIS record was terminated without explanation, forcing him to halt his academic progress and lose access to professional opportunities tied to his program.

66.    He is experiencing significant mental and emotional distress, as well as financial instability. His academic future is now uncertain. His elderly parents, both over 70 years old, have experienced a decline in health due to the stress. He can no longer pursue the internship necessary for advancement in his field, and fears the complete derailment of his long-planned path toward a Ph.D.

67.    Upon information and belief, the SEVIS termination may relate to a traffic-related misunderstanding involving a temporary license plate, which he reports was dismissed by a judge.

68.    Instead of continuing toward his professional and academic goals, he now faces housing instability, the loss of lawful status, and the looming threat of deportation.

***Student Doe #3***

69.     Student Doe #3 is currently pursuing a master's degree, where he maintains a 4.0 GPA and was working as a research assistant on a federally funded project. He previously earned a bachelor's degree in the U.S. and completed OPT employment as a utility forester. He was on track to graduate in May 2025 and begin a Ph.D. program in the summer. On April 10, 2025, his SEVIS record was terminated without prior notice, immediately ending his enrollment and employment.

70.     He is experiencing intense anxiety, financial hardship, and emotional distress. He lost his monthly stipend, is unable to complete his degree, and has been forced to borrow money to cover basic expenses and legal fees.

71.     Upon information and belief, the SEVIS termination may relate to either a dismissed traffic citation or a trespass charge that he believes was resolved. He now lives in fear of detention and removal, and reports being afraid to leave his home.

72.     Instead of completing his graduate program and transitioning to a Ph.D., Student Doe #3 has been stripped of his legal status, income, academic standing, and future research opportunities.

***Student Doe # 4***

73.     Student Doe #4 recently completed his academic program and was approved for post-completion OPT. He maintained a 3.96 GPA and was preparing to begin professional employment this summer. On April 10, 2025, his SEVIS record was terminated without prior explanation, blocking his ability to work and halting his transition from student to professional life.

74. He is experiencing financial instability, anxiety, and uncertainty about his future in the United States. He lost his on-campus job and is no longer able to apply for OPT positions or maintain volunteer leadership roles.

75. Upon information and belief, the SEVIS termination may relate to a traffic citation issued shortly after his arrival to the U.S., which, upon information and belief, has been fully resolved.

76. Instead of entering the workforce, he now faces lost wages, disrupted immigration status, and emotional and financial distress stemming from a single incident that had been fully resolved.

***Student Doe #5***

77. Student Doe #5 earned a master's degree and was working under STEM OPT in a position directly related to his field. He had recently married his longtime partner and was building a life in North Carolina. On April 4, 2025, he was notified that his SEVIS record had been terminated, with no specific explanation beyond a reference to a criminal records check. He was immediately placed on unpaid leave by his employer.

78. Student Doe #5 is experiencing acute emotional distress, sleeplessness, and anxiety. His future with his current employer is now in jeopardy, as company policy prohibits rehire in cases of immigration status issues. He fears losing his job permanently and being separated from his spouse.

79. Upon information and belief, the SEVIS termination may relate to a prior airport encounter years ago, when his SEVIS record was inactive upon arrival. He states that the issue was fully resolved through reinstatement and lawful reentry, and that he has had no violations since.

80.     Instead of building a life with his spouse and advancing his career, he now faces unpaid leave, professional derailment, and the threat of detention and deportation.

***Student Doe # 6***

81.     Student Doe #6 earned a master's degree in advanced data analytics and began working under OPT in 2023. He received a STEM OPT extension in 2024 and continued employment without issue. In 2025, he was selected in the H-1B lottery. On April 8, 2025, he was notified that his SEVIS record had been terminated and his visa revoked, forcing him to stop working and placing his professional future in immediate jeopardy.

82.     He is experiencing severe emotional distress, including anxiety and physical symptoms of stress. His employer has placed him on leave and enforces a policy that prohibits rehire after termination, placing his career and future immigration eligibility at risk.

83.     Upon information and belief, the SEVIS termination may relate to a 2021 public intoxication citation, which he states was dismissed in 2022.

84.     Instead of continuing a promising career in her field and pursuing H-1B status, he is now out of status, unable to work, and uncertain whether he will be forced to leave the country.

***Student Doe #7***

85.     Student Doe #7 is currently pursuing a degree and was working under CPT as an intern. She had also secured a job offer for the upcoming summer. On April 11, 2025, her SEVIS record was terminated without warning or explanation, cutting off her ability to continue working and placing her academic status in jeopardy just weeks before a major final project deadline.

86.     She is experiencing significant emotional distress, including anxiety, uncertainty, and physical illness. She reports being unable to focus and fears she may have to repeat the academic year, which would impose a substantial financial burden.

87.     Upon information and belief, the SEVIS termination may relate to a low-amount retail theft citation, which she states has been resolved.

88.     Instead of completing her education and entering the workforce, she is now ineligible to work, unable to complete her studies, and overwhelmed by the fear of losing everything she has worked for in the United States.

***Student Doe # 8***

89.     Student Doe #8 earned a degree from a university and began working under OPT in a position directly related to her field of study. On April 4, 2025, her SEVIS record was terminated by DHS, and she was immediately terminated from her job. Days later, she was informed that her visa had also been revoked. As a result, her career progress came to a sudden halt, and she is now unable to work or lawfully remain in the United States.

90.     She is experiencing severe emotional distress, physical symptoms of stress, and mental health challenges requiring therapy. She reports feelings of fear, instability, and constant anxiety about detention and deportation.

91.     Upon information and belief, the SEVIS termination may relate to two shoplifting-related arrests, neither of which resulted in a conviction. She states that one case was dismissed and the other remains unresolved with no formal charges filed to date.

92.     Instead of building her career in the U.S, she now faces unemployment, emotional and legal uncertainty, and the collapse of the future she worked hard to build.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE
UNITED STATES CONSTITUTION
(Unlawful F-1 Student Status Termination)

93.     Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth herein.

94.     The United States Constitution requires notice and a meaningful opportunity to be heard. *See Choeum v. I.N.S.*, 129 F.3d 29, 38 (1st Cir. 1997) ("At the core of [a noncitizen's] . . . due process rights is the right to notice and the nature of the charges and a meaningful opportunity to be heard.").

95.     Once a student is lawfully admitted to the United States in F-1 status and complies with the regulatory requirements of that status, the continued registration of that student in SEVIS is a statutorily conferred nondiscretionary government benefit, governed by specific and mandatory regulations. This creates a protected property interest. Because these regulations impose mandatory constraints on agency action and because SEVIS registration is necessary for a student to remain enrolled as an international student, Plaintiff has a constitutionally protected property interest in their SEVIS registration. *In re Muthana*, No. 22-cv-02200, 2023 U.S. Dist. LEXIS 213141 (N.D. Ill. Nov. 30, 2023) (recognizing protected property interest in non-discretionary Petition for Alien Relative).

96.     Defendants terminated Plaintiffs' F-1 student status under the SEVIS system without (i) notifying them about the termination decisions, (ii) providing them with individualized hearings before impartial adjudicators, and (iii) providing them with the adverse evidence and an opportunity to confront and respond to such evidence.

97.     Defendants' disregard for complying with the well-established due process principles violated Plaintiffs' due process rights.


### SECOND CAUSE OF ACTION

VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT—ARBITRARY AND CAPRICIOUS AGENCY ACTION
(Unlawful F-1 Student Status Termination)

98.     Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth herein.

99.     Defendants' termination of Plaintiffs' F-1 student status under the SEVIS system is a final agency action. *See Jie Fang*, 935 F.3d at 182 ("[t]he order terminating these students' F-1 visas marked the consummation of the agency's decision-making process, and is therefore a final order").

***Arbitrary and Capricious***

100.    Defendants' termination violates the Administrative Procedure Act (APA) and should be set aside pursuant to 5 U.S.C. § 706(2)(A) as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, including the regulatory regime at 8 C.F.R. § 214.1(d).

101.    Under 8 C.F.R. § 214.1(d), Defendants have no statutory or regulatory authority to terminate Plaintiffs' SEVIS record or status based simply on revocation of a visa. Additionally, nothing in any of the Plaintiffs' criminal history or other history provides a lawful basis for termination.

102.    Moreover, in deciding to terminate Plaintiffs' student status, Defendants failed to consider any facts relevant to Plaintiffs' individual circumstances and provided no

explanation—let alone a reasoned one—to justify their decision. This failure to conduct an individualized assessment or offer a rationale renders the termination arbitrary, capricious, and in violation of the APA.

***Contrary to Law***

103.    Under § 706(a) of the APA, final agency action can be set aside if it is "contrary to a constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

104.    Defendants terminated Plaintiffs' SEVIS record based upon improper grounds, without prior notice, and without providing Plaintiffs with an opportunity to respond. The failure to provide notice of the facts that formed the basis for the SEVIS termination is a violation of due process under the Fifth Amendment.

105.    Therefore, Defendant's termination of Plaintiffs' SEVIS status is not in accordance with law, exceeds statutory authority, and was carried out without observance of procedures required by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

I.     Assume jurisdiction over this matter;

II.    Declare that the termination of Plaintiffs' SEVIS registration and termination of F-1 nonimmigrant student status was unlawful;

III.   Vacate and set aside Defendants' termination of Plaintiffs' SEVIS registration and termination of F-1 nonimmigrant student status;

IV.    Order that Defendants restore Plaintiffs' SEVIS registration, and F-1 nonimmigrant student status, as well as any OPT or CPT;

V.    Enjoin Defendants from taking any enforcement action against Plaintiffs arising directly or indirectly from their misdemeanor charges or the unlawful termination of their SEVIS,;

VI.    Enjoin Defendants from detaining Plaintiffs pending this litigation;

VII.    Enjoin Defendants from removing Plaintiffs from the United States pending this litigation;

VIII.    Award costs and reasonable attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(b); and

IX.    Grant such further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Waleed Naser*
Illinois 6341786
Tennessee 037970
Naser Immigration Law, LLC
155 N. Wacker Dr. Suite 4250
Chicago, IL 606061
PH: (872) 265-8490
waleed@naserlegal.com

*/s/ Farah Chalisa*
Illinois 6335671
Naser Immigration Law, LLC
155 N. Wacker Dr., Suite 4250
Chicago, Illinois 60606
Telephone: 224-614-2770
farah@naserlegal.com

Attorneys for Plaintiffs.

Dated: April 17, 2025.