**Exhibit 10 (Recent TRO Grants)**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KRISH LAL ISSERDASANI and
HAMIDREZA KHADEMI,

<table>
<tr><td style="width:50%"></td><td style="width:50%"></td></tr>
</table>

|  |  |
|---|---|
|                         Plaintiffs, | OPINION AND ORDER |
|    v. | 25-cv-283-wmc |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security; the U.S. DEPARTMENT OF HOMELAND SECURITY; and TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement, |  |
|                         Defendants. |  |

---

Plaintiffs Krish Lal Isserdasani and Hamidreza Khademi have filed a complaint for declaratory and injunctive relief against Kristi Noem, in her official capacity as Secretary of Homeland Security ("DHS"), DHS, and Todd Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), claiming that DHS and ICE unlawfully terminated records of their F-1 international student visa status in the Student and Exchange Visitor System ("SEVIS"). (Dkt. #1.) Plaintiffs further claim that defendants violated their right to due process and the Administrative Procedure Act ("APA") by terminating their SEVIS records and putting them in jeopardy of unjustified, accelerated deportation. Plaintiffs have filed an emergency motion for a temporary restraining order, asking the court to: (1) enjoin defendants' decision to terminate plaintiffs' records in SEVIS and their F-1 student visas; and (2) enjoin defendants from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as a result of that pending a decision in this case, including causing plaintiffs' visas to be revoked or detaining or removing plaintiffs. (Dkt. #4.)

The court held a telephonic hearing with counsel for all parties on April 14, 2025, during which the court entered an oral ruling on the motion for a temporary restraining order. For reasons set forth below and stated on the record at the hearing, the motion for a temporary restraining order is granted in part as to plaintiff Isserdasani pending a preliminary injunction hearing on April 28, 2025, and reserved in part as to plaintiff Khademi.

## BACKGROUND[1]

Congress has authorized non-immigrant F-1 visas for international students who enroll in approved academic institutions. 8 U.S.C. § 1101(a)(15)(F)(i). Once admitted to the United States with F-1 status, an international student is granted permission to stay in the United States as long as they continue to meet the requirements of their visa classification by maintaining a full course of study or participating in authorized "practical training" following the completion of studies. 8 C.F.R. §§ 214.2(f)(6), 214.2(f)(10)(i). To maintain lawful status, nonimmigrant visa-holders (such as students with F-1 visas) may not engage in certain specified activity, such as engaging in unauthorized employment, providing false information to DHS, or engaging in "criminal activity." 8 C.F.R. § 214.2(e)-(g).

Criminal activity, for purposes of maintaining visa status, is defined to include instances in which a student is "convict[ed] . . . for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)." 8 C.F.R. § 214.1(g). For an international student, these specified actions may result in the termination of their SEVIS records, which effectively ends a student's F-1 status.

---

[1] Unless otherwise indicated, the following facts are taken from exhibits attached to the complaint and plaintiffs' declarations.

2

SEVIS is a centralized database that tracks international students' compliance with their F-1 status.[2]  In the absence of a student's conduct causing a status violation, ICE can *only* terminate SEVIS records under three circumstances: (1) a previously-granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d). DHS cannot otherwise unilaterally terminate nonimmigrant status.  *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019).

### A.  Krish Lal Isserdasani

Plaintiff Krish Lal Isserdasani is a 21-year-old undergraduate student from India, who has been pursuing a bachelor's degree in computer engineering at the University of Wisconsin-Madison with an F-1 student visa since 2021.  Having maintained full-time enrollment and good academic standing, Isserdasani is now in the final semester of his senior year with less than 30 days remaining until an expected graduation on May 10, 2025.

Isserdasani acknowledges that he was arrested on November 22, 2024, after he and his friends got into a verbal argument with another group while walking home late at night from a bar.  Although Isserdasani was arrested for disorderly conduct, the District Attorney declined to pursue charges after reviewing the case.  As a result, Isserdasani never had to appear in court and believed the matter was completely resolved with no possible immigration consequences. Aside from this encounter, Isserdasani has had *no* other interactions with law enforcement.

---

[2] *See* About SEVIS, Dep't of Homeland Security, https://studyinthestates.dhs.gov/site/about-sevis (last visited April 14, 2025).

3

Nevertheless, on April 4, 2025, the University of Wisconsin-Madison's International Student Services (ISS") office informed Isserdasani by an email out of the blue that his SEVIS record had been terminated by the U.S. Student and Exchange Visitor Program ("SEVP") operated by DHS.  (Pl. Comp. Ex. A (dkt. #1-2) at 2.)  The reason given was as follows: "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked.  SEVIS record has been terminated." (*Id*.)  The email states further, "A termination for this reason does not have a grace period to depart the U.S.," and "[a]ll employment benefits, including on-campus employment and any practical training you may have had authorized, end immediately when a SEVIS record is terminated.  Therefore, you no longer have authorization to work in the United States." (*Id*.)

Isserdasani received no communication from ICE, the university, or the State Department regarding any revocation of his visa.  He was given no warning, no opportunity to explain or defend himself, and no chance to correct any potential misunderstanding before his F-1 student visa record was terminated in SEVIS.

As a result of the termination, Isserdasani will be prevented from completing his degree and applying for Optional Practical Training ("OPT") to gain work experience as authorized by his F-1 student visa.  According to the email notifying Isserdasani that his SEVIS record was terminated, his authorization to remain in United States ends on May 2, 2025, before completing his final semester and graduating on May 10.  (Pl. Comp. Ex. A (dkt. #1) at 2.)  Isserdasani and his family have reportedly invested approximately $240,000 in his education in the United States, and he stands to lose $17,500 in tuition for the current semester.  He would also be liable for rental payments for the next four months despite being unable to remain in the country.

4

Finally, Isserdasani reports that the psychological impact of the termination has been overwhelming, causing difficulty in sleeping and fear that he will be placed in immediate detention and deportation. So much so that he reports being afraid to leave his apartment for fear of being apprehended at any moment.

### B. Hamidreza Khademi

Hamidreza Khademi is a 34-year-old citizen of Iran who has been enrolled in a master's degree program in architecture at Iowa State University with an F-1 student visa since 2021. After graduating in December 2023, he was approved for OPT through December 15, 2024, and was subsequently approved for an extension through December 15, 2026, which is available to F-1 international students in science, technology, engineering, and mathematics ("STEM") programs.

Under his OPT authorization, Khademi has been working as an assistant project manager at Stantec, where he was overseeing multiple infrastructure projects at Dallas-Fort Worth International Airport. He and his wife are expecting their first child, who is due to be born in 2 to 3 months.

Khademi acknowledges that he was arrested on February 28, 2024, and charged with "Evading Arrest/Detention w/ Motor Vehicle" in Texas. Khademi explains that he did not know the officer behind him wanted him to stop. The reason the officer wanted to stop Khademi is that he had failed to use his turn signal when changing lanes. Moreover, after reviewing the video evidence, the Texas Department of Public Safety determined that there was no violation and decided not to file any charges. Aside from this encounter, Khademi also has had no other interactions with law enforcement.

Nevertheless, on April 10, 2025, Iowa State University also informed Khademi by email that his SEVIS record had been terminated by DHS. Just like Isserdasani, Khademi was given the following reason: "OTHER - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." (Pl. Comp. Ex. A (dkt. #1-2) at 4.) So, too, Khademi was advised that based on the termination of his SEVIS record he no longer had "valid F-1 immigration status in the U.S." (*Id*.) With loss of his F-1 visa, Khademi was further advised that "all employment authorization, on- or off-campus ends immediately . . . so please cease any employment immediately." (*Id*.)

Because of the termination, Khademi can no longer continue his employment or apply for an extension of work authorization, which is available for F-1 students in STEM programs. The elimination of his salary so close to the birth of his child has also created a "catastrophic financial hardship" for his family. In addition to the significant stress created by his loss of income, Khademi lives in a similar fear of detention and deportation as Isserdasani, causing Khademi to fear every time he leaves his apartment.

## OPINION

Plaintiffs claim that the termination of their SEVIS records by DHS/ICE was unauthorized in violation of: (1) the APA, 5 U.S.C. § 706(2)(A), (C)&(D) because they have not engaged in any specified activity defined in 8 C.F.R. § 214.1(e)-(g); (2) the APA, 5 U.S.C. § 706(a), because the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; (3) the Fifth Amendment right to due process because SEVIS registration is a requirement for an international student to remain enrolled, giving rise to a constitutionally protected property interest that requires notice and an opportunity to be

heard; (4) the APA, 5 U.S.C. § 706(a), because the final agency action in terminating plaintiffs' SEVIS records based on improper grounds without prior notice or opportunity to be heard is "contrary to constitutional right, power, privilege, or immunity"; (5) the "*Accardi* Doctrine" found in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), which requires agencies to follow their own rules and procedures, which defendants did not do when they terminated plaintiffs' SEVIS records based on improper grounds; and (6) the Fifth Amendment Due Process Clause by putting plaintiffs at risk of unlawful detention without prior notice. (Dkt. #1.)

## I.  Venue

As an initial matter, plaintiffs rely on 28 U.S.C. § 1391(e)(1) to establish venue for their joint complaint against the defendants, who are federal officials.  (Pl. Comp. (dkt. #1) at 2 ¶ 7.)  Under 28 U.S.C. § 1391(e), "[a] civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and *with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party*." 28 U.S.C. § 1391(e) (emphasis added).

As plaintiffs point out, Isserdasani resides in Madison, Wisconsin, and there is no real property involved, making venue proper as to him under § 1391(e)(2)&(3).  (Pl. Comp. (dkt. #1) at 2 ¶ 7.)  However, plaintiffs include no facts showing that venue is proper for the claims brought by Khademi, who appears to have *no* ties to the Western District of Wisconsin, nor do the events or omissions giving rise to his claims.  Because it is unclear whether the claims by plaintiff Khademi were properly filed in the Western District, the court must reserve ruling on the motion for a temporary restraining order as far as his claims are concerned, at least pending further briefing by the parties.

## II.  Motion for Temporary Restraining Order

Plaintiffs move for a temporary restraining order on the grounds that they have not done anything to trigger the termination of their SEVIS records.  (Dkt. #5, at 13.)  They argue, therefore, that defendants lacked any basis under 8 C.F.R. 214.1 to terminate their F-1 student status and that doing so was -- at a minimum -- arbitrary, capricious, and not in accordance with the law for purposes of a claim under the APA, 5 U.S.C. § 706(2)(A), and was also done without any notice or opportunity to be heard.

The standard for determining whether a temporary restraining order or preliminary injunction is appropriate is the same. *See Planned Parenthood of Wis., Inc. v. Van Hollen*, 963 F. Supp. 2d 858, 865 (W.D. Wis. 2013) (citing *Winnig v. Sellen*, 731 F. Supp. 2d 855, 857 (W.D. Wis. 2010)).  "As a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has 'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied." *International Ass'n of Fire Fighters, Local 365 v. City of East Chicago*, 56 F.4th 437, 446 (7th Cir. 2022) (quoting

*Cassell v. Snyders*, 990 F.3d 539, 544-45 (7th Cir. 2021)).  If the movant makes this showing, the district court must then consider two additional factors: "the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied" and "the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Id.*

## A. Reasonable Likelihood of Success

Isserdasani's SEVIS record certainly appears to have been terminated for an arrest on a misdemeanor disorderly conduct charge, which was quickly dropped altogether by the charging authority.  As noted above, a non-immigrant visa-holder such as an F-1 international student fails to maintain status, and his visa may be terminated, on the grounds of "criminal activity," if *convicted* of a "crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)." 8 C.F.R. § 214.1(g). In Wisconsin, "[w]hoever, in a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a Class B misdemeanor," which carries a maximum sentence of 90 days imprisonment.  Wis. Stat. §§ 939.51, 947.01(1). Even if this misdemeanor offense qualifies as a crime of violence, the charge was declined by the Dane County District Attorney and was not pursued or proven.  As a result, Isserdasani was not convicted of a crime of violence or an offense that could result in a sentence of more than one year.

Accordingly, plaintiff Isserdasani has shown a substantial, if not overwhelming, likelihood of success on the merits of his claim in Count 2 that DHS violated the APA when it

summarily terminated his F-1 student status in SEVIS without cause. Specifically, based on the record currently before the court, Isserdasani is likely to show that DHS's termination of his F-1 student status was not in compliance with 8 C.F.R. § 214.1(d) and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A).

## B.  Irreparable Harm and Adequacy of Remedy at Law

Isserdasani faces possible devastating irreparable harm due to the termination of his F-1 student record in SEVIS, which will prevent him from completing his degree just *one* month away from his expected graduation with a four-year undergraduate degree in computer engineering from a premier academic institution in that field. The loss of timely academic process alone is sufficient to establish irreparable harm. *See Liu v. Noem*, No. 25-cv-133-SE, op. at 4 (D.N.H. April 10, 2025) (granting a motion for a temporary restraining order on an APA claim based on the termination of an F-1 international student's record in SEVIS). Given the amount of Isserdasani's educational expenses and potential losses from having to leave the United States without obtaining his degree, the court concludes that Isserdasani credibly demonstrates that he faces irreparable harm for which he has no adequate remedy at law in the absence of injunctive relief. *See Jie Fang*, 935 F.3d at 183-85.

## C.  Balancing Analysis

Where a plaintiff satisfies the threshold requirement for a preliminary injunction, courts weigh "the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted." *K.C. v. Individual Members of the Medical Licensing Bd. of Indiana*, 121 F.4th 604, 632

(7th Cir. 2024) (citations and internal quotation marks omitted).  "This is a sliding scale -- the more likely [the moving party] is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor."  *Id*. at 633 (alteration in original).  Part of this balancing process includes evaluating the public interest and the effects the preliminary injunction -- and its denial -- would have on nonparties.  *Id.*

For reasons set forth above, plaintiff Isserdasani has demonstrated a reasonable likelihood of success on his claim that his F-1 international student SEVIS record was wrongly terminated in violation of agency regulations.  Moreover, the marginal harm, if any, to defendants does not begin to equate with the likely harm to plaintiff.  Likewise, the public, which includes the taxpayers of the State of Wisconsin, has an overriding interest in seeing that students at the University of Wisconsin are able to be educated and obtain degrees earned with both sweat equity and tuition payments, unless there is a good reason to deny either.  This is a contract between the State of Wisconsin and its students.  So far, defendants have offered nothing to suggest Isserdasani is undeserving of a degree after years of effort and payment of tuition, much less should be deported from the United States before completing his degree.

Accordingly, the court concludes that all relevant factors favor plaintiff.

## ORDER

IT IS ORDERED that:

1) Plaintiffs' motion for a temporary restraining order (dkt. #4) is GRANTED in part as set forth below.

2) Pending a preliminary injunction hearing, defendants are enjoined from (1) terminating plaintiff Krish Lal Isserdasani's F-1 student status records from the Student and Exchange Visitor System ("SEVIS"); and (2) directly or indirectly

11

enforcing, implementing, or otherwise taking any action or imposing any legal consequences as the result of the decision to terminate his SEVIS records, including revoking Isserdasani's visa or detaining him.

3) The court will hold a preliminary injunction hearing at 10:00 a.m. on April 28, 2025.

4) Plaintiff Isserdasani shall file proposed findings of fact consistent with the court's procedures for preliminary injunctions by Friday April 18, 2025. Defendants may file under the same procedures by April 23, 2025.

5) Plaintiff Hamidreza Khademi may file additional briefing regarding the venue issue on which the court has reserved ruling by April 15, 2025. Counsel for defendants may file any briefing on that issue by the following day, April 16, 2025.

Entered this 15th day of April, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

12

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Student DOE #2, | No. CV-25-00175-TUC-AMM |
| Plaintiff, | **ORDER** |
| v. | |
| Donald J Trump, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff's Emergency Ex Parte Motion for a Temporary Restraining Order (TRO).  (Doc. 2).

Although "very few circumstances justify[] the issuance of an ex parte TRO," *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006), the Court has reviewed the pertinent briefs, record, and authority (*see* Docs. 1 through 6) and finds that Plaintiff has met all the requirements for a TRO.  *See* Fed. R. Civ. P. 65(b) (Court may only issue a TRO without notice to the adverse party if (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;" and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (Plaintiff seeking a TRO "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."); *All. for the Wild*

*Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (In the Ninth Circuit, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met.").[1]

In light of the exigent circumstances, the Court issues this necessarily brief Order. Plaintiff's Emergency Ex Parte Motion for a Temporary Restraining Order is **granted** to preserve the status quo until the Court can receive further briefing and hold a hearing on **April 29, 2025 at 10:00 a.m.**[2]  The Government shall file a response to Plaintiff's Emergency Motion for a Temporary Restraining Order by no later than **April 21, 2025**, and Plaintiff shall file a reply by no later than **April 24, 2025**.

**IT IS FURTHER ORDERED** as follows:

(a) Defendants are temporarily enjoined for fourteen days from arresting and detaining Plaintiff pending these proceedings, transferring Plaintiff away from the jurisdiction of this District pending these proceedings, or removing Plaintiff from the United States pending these proceedings;

(b) Defendants' actions in terminating Plaintiff's SEVIS record shall have no legal effect and shall not obstruct Plaintiff in continuing to pursue their academic and employment pursuits that Plaintiff is authorized to pursue as an international student in F-1 status.

(c) Plaintiff is not required to give security, *see* Fed. R. Civ. P. 65(c), as this Order

---

[1] Based on the limited information currently before the Court, the record reflects: (a) Plaintiff is a graduate student in lawful F-1 status; (b) Plaintiff is in full compliance with all requirements to lawfully remain in the United States pursuant to their F-1 status; (c) the Government has unlawfully terminated Plaintiff's Student and Exchange Visitor Information System ("SEVIS") record and revoked Plaintiff's F-1 visa in order to arrest, detain, or transfer Plaintiff far from Plaintiff's home, school, employer, and community without any hearing.  Accordingly, in light of this record, Plaintiff has satisfied the requirements for a TRO at this very early stage of the litigation.

[2] The Court notes that United States District Judge Martinez is temporary unavailable.  As such, United States District Judge Soto has temporarily stepped into this case to handle the pending emergency motion.  However, this case remains with Judge Martinez, and Judge Martinez will be presiding over this case going forward (including the hearing set for April 29, 2025).

should not result in any financial damage to Defendants.

       (d) Plaintiff shall serve Defendants with this Order forthwith.[3]

        Dated this 15th day of April, 2025.

 

                                        Honorable James A. Soto
                                        United States District Judge

---

[3] This Order was filed at approximately 3:12 p.m. on April 15, 2025.

- 3 -

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Student DOE #2, | No. CV-25-00175-TUC-AMM |
| Plaintiff, | **ORDER** |
| v. | |
| Donald J Trump, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff's Emergency Ex Parte Motion for a Temporary Restraining Order (TRO).  (Doc. 2).

Although "very few circumstances justify[] the issuance of an ex parte TRO," *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006), the Court has reviewed the pertinent briefs, record, and authority (*see* Docs. 1 through 6) and finds that Plaintiff has met all the requirements for a TRO.  *See* Fed. R. Civ. P. 65(b) (Court may only issue a TRO without notice to the adverse party if (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;" and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (Plaintiff seeking a TRO "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."); *All. for the Wild*

*Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (In the Ninth Circuit, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met.").[1]

In light of the exigent circumstances, the Court issues this necessarily brief Order. Plaintiff's Emergency Ex Parte Motion for a Temporary Restraining Order is **granted** to preserve the status quo until the Court can receive further briefing and hold a hearing on **April 29, 2025 at 10:00 a.m.**[2] The Government shall file a response to Plaintiff's Emergency Motion for a Temporary Restraining Order by no later than **April 21, 2025**, and Plaintiff shall file a reply by no later than **April 24, 2025**.

**IT IS FURTHER ORDERED** as follows:

(a) Defendants are temporarily enjoined for fourteen days from arresting and detaining Plaintiff pending these proceedings, transferring Plaintiff away from the jurisdiction of this District pending these proceedings, or removing Plaintiff from the United States pending these proceedings;

(b) Defendants' actions in terminating Plaintiff's SEVIS record shall have no legal effect and shall not obstruct Plaintiff in continuing to pursue their academic and employment pursuits that Plaintiff is authorized to pursue as an international student in F-1 status.

(c) Plaintiff is not required to give security, *see* Fed. R. Civ. P. 65(c), as this Order

---

[1] Based on the limited information currently before the Court, the record reflects: (a) Plaintiff is a graduate student in lawful F-1 status; (b) Plaintiff is in full compliance with all requirements to lawfully remain in the United States pursuant to their F-1 status; (c) the Government has unlawfully terminated Plaintiff's Student and Exchange Visitor Information System ("SEVIS") record and revoked Plaintiff's F-1 visa in order to arrest, detain, or transfer Plaintiff far from Plaintiff's home, school, employer, and community without any hearing. Accordingly, in light of this record, Plaintiff has satisfied the requirements for a TRO at this very early stage of the litigation.

[2] The Court notes that United States District Judge Martinez is temporary unavailable. As such, United States District Judge Soto has temporarily stepped into this case to handle the pending emergency motion. However, this case remains with Judge Martinez, and Judge Martinez will be presiding over this case going forward (including the hearing set for April 29, 2025).

should not result in any financial damage to Defendants.

(d) Plaintiff shall serve Defendants with this Order forthwith.[3]

Dated this 15th day of April, 2025.

Honorable James A. Soto
United States District Judge

---

[3] This Order was filed at approximately 3:12 p.m. on April 15, 2025.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN DOE,

        Plaintiff,

    v.

KRISTI NOEM, TODD M. LYONS, MOISES BECERRA, and DONALD J. TRUMP,

        Defendants.

Case No. 25-cv-03140-JSW

**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER AND SETTING BRIEFING SCHEDULE AND HEARING**

Re: Dkt. No. 9

Now before the Court is Plaintiff's motion pursuant to Federal Rule of Civil Procedure 65(b) for a temporary restraining order. Defendants are Kristi Noem, in her official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"), Todd M. Lyons, in his official capacity as the Acting Director of Immigration and Customs Enforcement ("ICE"), Moises Becerra, in his official capacity as the Acting Field Office Director of the San Francisco ICE Office of Detention and Removal, and Donald J. Trump, in his official capacity as President of the United States (collectively, "the Government").

Plaintiff asks the Court to temporarily enjoin Defendants from taking any enforcement action against him arising directly or indirectly from the termination of Plaintiff's Student and Exchange Visitor Information Systems ("SEVIS") records and possible revocation of his F-1 visa. The limited record before the Court indicates that Plaintiff is a former international student currently working pursuant to post-graduate employment authorization in this District. (Compl., ¶

15.)[1]  He has been present in the United States on an F-1 visa and is married to a United States citizen.  (*Id.* ¶ 40.)  Plaintiff argues he "set to change status" on June 28, 2025.  (Mot. at 4.)  On March 28, 2025, Plaintiff received a notice from his graduate school that his SEVIS status was terminated.  The reason cited was failure to maintain status based on a criminal records check.  (*Id.* ¶¶ 34-35.)  Plaintiff acknowledges a minor misdemeanor conviction but alleges it was not for a crime of violence and did not carry a potential sentence of more than one year.  (*Id.* ¶ 38.)[2]

Plaintiff's counsel indicates that has been corresponding with the Office of the United States Attorney about this matter and the pending motion.  Counsel requested that the Government agree not to arrest Plaintiff pending resolution of this litigation.  The Government did not agree.  (Mot. at 6.)

Although "very few circumstances" justify the issuance of an *ex parte* temporary restraining order ("TRO"), based on the Court's review of Plaintiff's motion, allegations in the complaint, and relevant authorities, it finds that Plaintiff has met the requirement for an emergency *ex parte* TRO at this time.  *See* Fed. R. Civ. P. 65(b) (Court may only issue a TRO without notice to the adverse party is (1) "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;" and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.")

A plaintiff seeking a TRO "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008); *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (holding that, in the Ninth Circuit, "serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the W*inter* test are also met").  Where, as here, the

---

[1]      Plaintiff separately seeks to proceed under a pseudonym.  (Dkt. No. 2.)

[2]      Pursuant to 8 C.F.R. section 214.1(g), only a crime of violence and for which a sentence of more than one year imprisonment may be imposed constitutes a failure to maintain status.

United States District Court
Northern District of California

Government is a party, the last two factors merge.  *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

The Court is satisfied that Plaintiff has shown a likelihood of success and at the very least has shown serious questions going to the merits of his claim under the Administrative Procedure Act.  Plaintiff alleges that "ICE takes the position that the termination of a SEVIS record effectively ends F-1 student status."  (Compl. ¶ 4.)  Plaintiff argues the termination is a final agency action for purposes of the APA.  *See, e.g., Fang v. Director U.S. Immigration & Customs Enforcement,* 935 F.3d 172, 185 (3rd Cir. 2019) (holding that order terminating F-1 visa status was final agency action for jurisdictional purposes).  Plaintiff alleges that he had advised ICE of the conviction.  Based on the current record, none of the grounds on which Defendants relied to terminate his SEVIS status comport with 8 C.F.R. § 814.1(d).  *See, e.g., Roe v. Noem*, No. CV 25-40-BU-DLC, 2025 WL 1114694, at *3 (D. Mont. April 15, 2025) (granting TRO on APA claim on similar facts: student alleged DHS unlawfully terminated F1-status in SEVIS system and cited reasons did not comport with statutory or regulatory requirements); *Isserdasani v. Noem*, No. 25-cv-283-WMC, 2025 WL 1118626 (W.D. Wis. April 15, 2025) (same).

The  Court also concludes Plaintiff has shown the likelihood of irreparable harm absent relief.  Plaintiff alleges that his spouse "struggles with serious mental health issues and … is the primary caretaker for a family member suffering from serious illness."  (Compl., ¶ 40.)  He argues that if he was "arrested and incarcerated in an immigration jail as a result of ICE's [] termination of their SEVIS record, Plaintiff and their U.S. citizen spouse would suffer even further excruciating mental, emotional, and financial harm."  (*Id.*)  The Court's conclusion on this factor is further supported by the Government's refusal not to arrest Plaintiff in the interim.

Given the limited scope of this TRO, the serious consequences that could befall Plaintiff, and because "the public interest is served by compliance with the APA,"[3] the Court concludes the final two *Winter* factors weigh in favor of granting the TRO.  Finally, under the circumstances of this case and because the TRO should not result in any financial damage to Defendants, the Court

---

[3]     *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021) (cleaned up).

United States District Court
Northern District of California

waives the requirement that Plaintiff give an amount of security.

Accordingly, the Court GRANTS Plaintiff's motion for a TRO to preserve the status quo pending further briefing and a fulsome hearing on this matter. The Court shall hold an in-person hearing on Friday, April 25, 2025, at 9:00 a.m. Defendants shall file a response to Plaintiff's motion by no later than April 21, 2025, at 11:00 a.m. Plaintiff shall file a reply by no later than April 23, 2025, at 11:00 a.m.

IT IS FURTHER ORDERED as follows:

(1) Defendants are enjoined for 14 days from arresting and incarcerating Plaintiff pending resolution of these proceedings. 5 U.S.C. § 705; and

(2) Defendants are enjoined for 14 days from transferring Plaintiff outside the jurisdiction of this District pending the resolution of these proceedings. 5 U.S.C. § 705; and

(3) The parties are ordered to redact or file any information identifying Plaintiff under seal; and

(4) Defendants' counsel are prohibited from sharing any information about Plaintiff's identity or related personal information beyond what is reasonably necessary for the litigation (including to comply with Court orders) and to prohibit use of the information for any purpose outside of the litigation; and

(5) Plaintiff shall serve Defendants with this Order forthwith and provide proof of service on the docket by no later than April 17, 2025, by 1:00 p.m.

**IT IS SO ORDERED.**

Dated: April 17, 2025 at 9:27 a.m.

_____
JEFFREY S. WHITE
United States District Judge

4

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN DOE,

          Plaintiff,

    v.

KRISTI NOEM, TODD M. LYONS,
MOISES BECERRA, and DONALD J.
TRUMP,

          Defendants.

Case No.  25-cv-03140-JSW

**ORDER GRANTING MOTION FOR
TEMPORARY RESTRAINING ORDER
AND SETTING BRIEFING SCHEDULE
AND HEARING**

Re: Dkt. No. 9

     Now before the Court is Plaintiff's motion pursuant to Federal Rule of Civil Procedure
65(b) for a temporary restraining order.  Defendants are Kristi Noem, in her official capacity as the
Secretary of the U.S. Department of Homeland Security ("DHS"), Todd M. Lyons, in his official
capacity as the Acting Director of Immigration and Customs Enforcement ("ICE"), Moises
Becerra, in his official capacity as the Acting Field Office Director of the San Francisco ICE
Office of Detention and Removal, and Donald J. Trump, in his official capacity as President of the
United States (collectively, "the Government").

     Plaintiff asks the Court to temporarily enjoin Defendants from taking any enforcement
action against him arising directly or indirectly from the termination of Plaintiff's Student and
Exchange Visitor Information Systems ("SEVIS") records and possible revocation of his F-1 visa.
The limited record before the Court indicates that Plaintiff is a former international student
currently working pursuant to post-graduate employment authorization in this District.  (Compl., ¶

United States District Court
Northern District of California

15.)[1]  He has been present in the United States on an F-1 visa and is married to a United States citizen.  (*Id.* ¶ 40.)  Plaintiff argues he "set to change status" on June 28, 2025.  (Mot. at 4.)  On March 28, 2025, Plaintiff received a notice from his graduate school that his SEVIS status was terminated.  The reason cited was failure to maintain status based on a criminal records check.  (*Id.* ¶¶ 34-35.)  Plaintiff acknowledges a minor misdemeanor conviction but alleges it was not for a crime of violence and did not carry a potential sentence of more than one year.  (*Id.* ¶ 38.)[2]

Plaintiff's counsel indicates that has been corresponding with the Office of the United States Attorney about this matter and the pending motion.  Counsel requested that the Government agree not to arrest Plaintiff pending resolution of this litigation.  The Government did not agree.  (Mot. at 6.)

Although "very few circumstances" justify the issuance of an *ex parte* temporary restraining order ("TRO"), based on the Court's review of Plaintiff's motion, allegations in the complaint, and relevant authorities, it finds that Plaintiff has met the requirement for an emergency *ex parte* TRO at this time.  *See* Fed. R. Civ. P. 65(b) (Court may only issue a TRO without notice to the adverse party is (1) "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;" and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.")

A plaintiff seeking a TRO "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008); *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (holding that, in the Ninth Circuit, "serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the W*inter* test are also met").  Where, as here, the

---

[1]   Plaintiff separately seeks to proceed under a pseudonym.  (Dkt. No. 2.)

[2]   Pursuant to 8 C.F.R. section 214.1(g), only a crime of violence and for which a sentence of more than one year imprisonment may be imposed constitutes a failure to maintain status.

Government is a party, the last two factors merge.  *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

The Court is satisfied that Plaintiff has shown a likelihood of success and at the very least has shown serious questions going to the merits of his claim under the Administrative Procedure Act.  Plaintiff alleges that "ICE takes the position that the termination of a SEVIS record effectively ends F-1 student status." (Compl. ¶ 4.)  Plaintiff argues the termination is a final agency action for purposes of the APA.  *See, e.g., Fang v. Director U.S. Immigration & Customs Enforcement,* 935 F.3d 172, 185 (3rd Cir. 2019) (holding that order terminating F-1 visa status was final agency action for jurisdictional purposes).  Plaintiff alleges that he had advised ICE of the conviction.  Based on the current record, none of the grounds on which Defendants relied to terminate his SEVIS status comport with 8 C.F.R. § 814.1(d).  *See, e.g., Roe v. Noem*, No. CV 25-40-BU-DLC, 2025 WL 1114694, at *3 (D. Mont. April 15, 2025) (granting TRO on APA claim on similar facts: student alleged DHS unlawfully terminated F1-status in SEVIS system and cited reasons did not comport with statutory or regulatory requirements); *Isserdasani v. Noem*, No. 25-cv-283-WMC, 2025 WL 1118626 (W.D. Wis. April 15, 2025) (same).

The  Court also concludes Plaintiff has shown the likelihood of irreparable harm absent relief.  Plaintiff alleges that his spouse "struggles with serious mental health issues and … is the primary caretaker for a family member suffering from serious illness." (Compl., ¶ 40.)  He argues that if he was "arrested and incarcerated in an immigration jail as a result of ICE's [] termination of their SEVIS record, Plaintiff and their U.S. citizen spouse would suffer even further excruciating mental, emotional, and financial harm." (*Id.*)  The Court's conclusion on this factor is further supported by the Government's refusal not to arrest Plaintiff in the interim.

Given the limited scope of this TRO, the serious consequences that could befall Plaintiff, and because "the public interest is served by compliance with the APA,"[3] the Court concludes the final two *Winter* factors weigh in favor of granting the TRO.  Finally, under the circumstances of this case and because the TRO should not result in any financial damage to Defendants, the Court

---

[3]     *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021) (cleaned up).

United States District Court
Northern District of California

waives the requirement that Plaintiff give an amount of security.

Accordingly, the Court GRANTS Plaintiff's motion for a TRO to preserve the status quo pending further briefing and a fulsome hearing on this matter. The Court shall hold an in-person hearing on Friday, April 25, 2025, at 9:00 a.m. Defendants shall file a response to Plaintiff's motion by no later than April 21, 2025, at 11:00 a.m. Plaintiff shall file a reply by no later than April 23, 2025, at 11:00 a.m.

IT IS FURTHER ORDERED as follows:

(1) Defendants are enjoined for 14 days from arresting and incarcerating Plaintiff pending resolution of these proceedings. 5 U.S.C. § 705; and

(2) Defendants are enjoined for 14 days from transferring Plaintiff outside the jurisdiction of this District pending the resolution of these proceedings. 5 U.S.C. § 705; and

(3) The parties are ordered to redact or file any information identifying Plaintiff under seal; and

(4) Defendants' counsel are prohibited from sharing any information about Plaintiff's identity or related personal information beyond what is reasonably necessary for the litigation (including to comply with Court orders) and to prohibit use of the information for any purpose outside of the litigation; and

(5) Plaintiff shall serve Defendants with this Order forthwith and provide proof of service on the docket by no later than April 17, 2025, by 1:00 p.m.

**IT IS SO ORDERED.**

Dated: April 17, 2025 at 9:27 a.m.

_____
JEFFREY S. WHITE
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JOHN ROE and JANE DOE, | CV 25–40–BU–DLC |
| Plaintiffs, | |
| vs. | ORDER |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security; the DEPARTMENT OF HOMELAND SECURITY; and TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement, | |
| Defendants. | |

Before the Court is Plaintiffs John Roe and Jane Doe's[1] ("Plaintiffs")

Emergency Motion for Temporary Restraining Order and Preliminary Injunction.

(Doc. 2.) For the reasons herein, the Court issues a temporary restraining order and

sets a hearing on the Motion for April 29, 2025.

**BACKGROUND**

Plaintiffs are full-time international students currently enrolled at Montana

State University, Bozeman ("MSU") (Doc. 1 ¶ 2.) Roe, a citizen of Iran, received

---

[1] Plaintiffs are proceeding under pseudonym to protect themselves against retaliation, doxing, and/or harassment. (Doc. 2 at 3.)

1

an F-1 visa to study in the United States on July 26, 2016, and Doe, a citizen of

Turkey, first arrived in the United States on an F-1 visa in 2014. (Doc. 1 ¶¶ 20, 27.)

Roe has been pursuing a Ph.D. in electrical engineering since 2019, and Doe a

master's degree in microbiology since 2021. (*Id.* ¶ 3.) Neither student has been

convicted of committing any crime or violating any immigration law in the United

States, and neither student has been active in on-campus protests regarding any

political issue. (*Id.*)

On April 10, 2025, Plaintiffs received an email from MSU informing them

that their Student and Exchange Visitor Information System ("SEVIS") record was

terminated. (Docs. 4 ¶ 17; 5 ¶ 16.) According to the email, Plaintiffs' SEVIS

record indicated the following: "Individual identified in criminal records check

and/or has had their VISA revoked. SEVIS record has been terminated." (Docs. 6-

2 at 2; 6-3 at 2.) The email also provided that "[w]hen a student's record is

terminated, that student is expected to depart the United States immediately.

Unlawful presence in the United States could result in arrest, detention or

deportation by federal authorities." (*Id.*)

On April 14, 2025, Plaintiffs filed this lawsuit against Kristi Noem, in her

official capacity as Secretary of the Department of Homeland Security ("DHS"),

DHS, and Todd Lyons, in his official capacity as Acting Director of U.S.

Immigration and Customs Enforcement ("ICE") (collectively, Defendants),

alleging that DHS unlawfully terminated their F-1 student status in the SEVIS
system. (Docs. 1 ¶ 15; 3 at 19.) Plaintiffs challenge DHS's termination of their F-1
student status in the SEVIS system. (Doc. 3 at 19.) Plaintiffs do not challenge the
revocation of their F-1 visa. (*Id.*)

Count I alleges that Defendants violated the Due Process Clause of the Fifth
Amendment to the United States Constitution by terminating Plaintiffs' SEVIS
record based on improper grounds, without prior notice, and without providing
Plaintiffs an opportunity to respond. (Doc. 1 ¶¶ 51–53.) Count II alleges that
Defendants violated the Administrated Procedure Act ("APA") by terminating
Plaintiffs' SEVIS record without statutory or regulatory authority. (*Id.* ¶¶ 54–57.)
Count III alleges that Defendants violated the APA's procedural due process
provision, 5 U.S.C. § 706(2)(B), by terminating Plaintiffs' SEVIS records based on
improper grounds, without prior notice, and without providing Plaintiffs an
opportunity to respond. (*Id.* ¶¶ 58–60.) And Count IV alleges that because
Defendants failed to articulate the facts forming the basis for their decision to
terminate Plaintiffs' SEVIS status, Defendants actions were "arbitrary, capricious,
an abuse of discretion, or otherwise not accordance with the law." (*Id.* ¶¶ 61–63.)

Also on April 14, 2025, Plaintiffs filed an emergency motion for a
temporary restraining order and preliminary injunction, seeking an order from this
Court:

3

(1) requiring Defendants to restore Plaintiffs' F-1 student status in SEVIS;

(2) requiring Defendants Noem and Lyons to set aside the F-1 student status termination decisions as to Plaintiffs;

(3) prohibiting Defendants Noem and Lyons from terminating Plaintiffs' F-1 student status absent a valid ground as set forth in 8 C.F.R. § 214.1(d), and absent an adequate individualized pre-deprivation proceeding before an impartial adjudicator for each Plaintiff, in which they will be entitled to review any adverse evidence and respond to such evidence prior to determining anew that any Plaintiff's F-1 student status should be terminated;

(4) prohibiting all Defendants from arresting, detaining, or transferring Plaintiffs out of this Court's jurisdiction, or ordering the arrest, detention, or transfer of Plaintiffs out of this Court's jurisdiction, without first providing adequate notice to both this Court and Plaintiff's counsel as well as time to contest any such action; and

(5) prohibiting all Defendants from initiating removal proceedings against or deporting any Plaintiff on the basis of the termination of their F-1 student status.

(Doc. 2 at 2–3.) Plaintiffs further request a waiver of the requirement for bond or security as provided for by Federal Rule of Civil Procedure 65(c). (*Id.* at 3.)

Counsel for Defendants have not yet appeared. On April 15, 2025, this Court issued an order requiring Plaintiffs to provide further information regarding efforts to notify Defendants of this matter. (Doc. 9.) Plaintiffs subsequently filed a Notice explaining that they are actively engaged in email correspondence with the United

States Attorney's Office for the District of Montana. (Docs. 10; 10-1.) As of the

date of this Order, Defendants have not responded to Plaintiffs' Motion.

## LEGAL STANDARD

Temporary restraining orders "serv[e] the [] underlying purpose of

preserving the status quo and preventing irreparable harm just so long as is

necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of*

*Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439

(1974). To obtain emergency injunctive relief—whether that be a temporary

restraining order or preliminary injunction—a plaintiff must establish: (1) a

likelihood of success on the merits; (2) a likelihood of irreparable harm in the

absence of preliminary relief; (3) that the equities balance in the plaintiff's favor;

and (4) that preliminary injunctive relief would serve the public interest. *See*

*Winter v. Natural Res. Def Council, Inc.,* 555 U.S. 7, 20 (2008).

## DISCUSSION

Although Defendants have yet to appear in this case, Plaintiffs have

provided the Court with copies of email correspondence between the United States

Attorney's Office for the District of Montana regarding this case. (*See* Docs. 10;

10-1.) The Court finds this email exchange sufficient to demonstrate notice for

purposes of issuing a temporary restraining order, and thus will continue with a

discussion of the merits. *See Document Operations, L.L.C. v. AOS Legal Techs.,*

*Inc.*, 2021 WL 3729333, at *2 (5th Cir. 2021).

### I.      Likelihood of Success on the Merits

Plaintiffs argue they are likely to succeed on the merits of their Complaint

for two reasons: first, the termination of Plaintiffs' F-1 status under the SEVIS

system violates the APA and second, the termination violates the Due Process

Clause of the United States Constitution. (Doc. 3 at 19.)

Plaintiffs direct this Court to a recent decision out of the United States

District Court for the District of New Hampshire, a case presenting facts much like

those at issue here. *See Liu v. Noem*, 25-cv-133-SE (D. NH April 10, 2025). There,

a university student sued Noem and Lyons alleging that DHS unlawfully

terminated his F-1 student status in the SEVIS system. *Id.* The plaintiff alleged

DHS violated his due process rights under the Fifth Amendment to the United

States Constitution and violated the APA when it terminated his status in the

SEVIS system. *Id.* After oral argument, the court found the plaintiff was "likely to

show that DHS's termination of his F-1 student status was not in compliance with

8 C.F.R. § 214.1(d) and was arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with the law." *Id.* (citing 5 U.S.C. § 706(2)(A)).

The District of New Hampshire's conclusion is persuasive. 8 C.F.R. §

214.1(d) provides that "the nonimmigrant status of an alien shall be terminated by

the revocation of a waiver authorized on his or her behalf under section 212(d)(3)

6

or (4) of the Act; by the introduction of a private bill to confer permanent resident status on such alien; or, pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." None of these mechanisms have been employed in this case. 8 C.F.R. § 214.1(d) does not provide statutory or regulatory authority to terminate F-1 student status in SEVIS based upon revocation of a visa. *See Fang v. Director U.S. Immigration & Customs Enforcement*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019). Moreover, Plaintiffs' academic record and lack of criminal history fails to support an alternative basis for termination of their F-1 status; at any rate, DHS's decision does not purport to rely upon such a reason.

Therefore, the Court finds that Plaintiffs are likely to succeed on the allegation that Defendants' termination of Plaintiffs' F-1 student status under the SEVIS is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C. § 706(2). Because Plaintiffs are likely to succeed on their APA cause of action, the issue of due process need not be addressed at this time.

## II.    Likelihood of Irreparable Harm

Plaintiff Doe has been pursuing her master's degree in biology at MSU for the past three and a half years. (Doc. 5 ¶ 9.) As part of her program, she has been employed as a teaching and research assistant. (*Id.* ¶¶ 9–11.) Doe is scheduled to

complete her master's degree program and graduate with distinction on May 8, 2025. (*Id.* ¶ 12–15.) Plaintiff Roe has been pursuing his Ph.D. in electrical engineering/physics at MSU for the past six years. (Doc. 4 ¶ 7.) As part of his program, Roe has been employed by MSU as a research assistant and works approximately 60 to 65 hours per week. (*Id.* ¶ 8.) Losing F-1 status places Plaintiffs' education, research, financial stability, and career trajectories at imminent risk of irreparable harm. (Docs. 4 ¶ 22; 5 ¶ 21.) Plaintiffs also face the risk of immediate detention or removal from the United States.

In consideration of the above, Plaintiffs have successfully shown that, absent the relief provided for by a TRO, they will suffer irreparable harm for which an award of monetary damages would be insufficient.

## III.   Balance of Hardships and Public Interests

With respect to public interest, "when the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The relief requested restores Plaintiffs ability to remain in the United States to complete their degrees, and granting temporary relief in this instance will maintain the status quo. Although Defendants have yet to respond, the Court finds it compelling that Plaintiffs have not been convicted of any crime while in the United States. On balance, the

equities tip in Plaintiffs' favor at this stage of the proceedings. A TRO will preserve the status quo for the short duration until a hearing can be held in this matter.

Finally, it is unlikely any harm will come to Defendants as a result of this temporary restraining order. Therefore, the Court exercises its discretion to waive the bond requirement provided for by Rule 65(c). *See Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).

## CONCLUSION

Accordingly, IT IS ORDERED that Plaintiffs' Motion (Doc. 2) is GRANTED. Defendants Kristi Noam, the Department of Homeland Security, and Todd Lyons are temporarily enjoined for a period of fourteen days from the date of this Order as follows:

(1) Defendants shall restore Plaintiffs' F-1 student status in the Student and Exchange Visitor Information System;

(2) Defendants shall set aside the F-1 student status termination determination as to Plaintiffs;

(3) Defendants shall not terminate either Plaintiff's student status under the Student and Exchange Visitor Information System absent a valid ground as set forth in 8 C.F.R. § 214.1(d), and absent an adequate individualized pre-deprivation proceeding before an impartial adjudicator for each

9

Plaintiff;

(4) Defendants are prohibited from arresting, detaining, or transferring either

Plaintiff out of this Court's jurisdiction, or ordering the arrest, detention

or transfer of either Plaintiff out of this Court's jurisdiction, without first

providing adequate notice to both this Court and Plaintiffs' counsel as

well as appropriate time to contest any such action; and

(5) Defendants are prohibited from initiating removal proceedings against or

deporting either Plaintiff on the basis of the termination of their F-1

student status.

IT IS FURTHER ORDERED that the security required by Federal Rule of

Civil Procedure 65(c) is waived.

IT IS FURTHER ORDERED that Plaintiffs shall file, under seal, identifying

information including full name, address, and date of birth, and any other

information necessary for Defendants to reinstate their F-1 student status in the

Student and Exchange Visitor Information System.

IT IS FURTHER ORDERED that Defendants shall file their response to

Plaintiffs' Motion (Doc. 2) on or before April 21, 2025. Plaintiffs shall file their

reply brief on or before April 25, 2025.

IT IS FURTHER ORDERED that a hearing on Plaintiffs' Motion (Doc. 2)

shall be held on **April 29, 2025, at 9:00 a.m.** at the Russell Smith Federal

Courthouse in Missoula, Montana.

IT IS FURTHER ORDERED that the parties shall file respective notices by 5:00 p.m. on April 22, 2025, of any witnesses they intend to call at the hearing along with a brief summary of their expected testimony and the expected length of their testimony.

DATED this 15th day of April, 2025 at 4:45 p.m.

Dana L. Christensen, District Judge
United States District Court

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

ZILIANG J.,                                          Case No. 25-CV-1391 (PJS/DLM)

                 Plaintiff,

v.                                                            ORDER

KRISTI NOEM, Secretary of Department of
Homeland Security, in her official capacity;
TODD LYONS, Acting Director of
Immigration and Customs Enforcement, in
his official capacity; and U.S.
IMMIGRATION & CUSTOMS
ENFORCEMENT,

                 Defendants.

---

Cameron Lane Youngs Giebink, David L. Wilson, Gabriela Sophia
Anderson, and Katherine Lourdes Santamaria Mendez, WILSON LAW
GROUP, for plaintiff.

This matter is before the Court on plaintiff's emergency motion for a temporary

restraining order ("TRO") against defendants Kristi Noem, Todd Lyons, and U.S.

Immigration & Customs Enforcement ("ICE") (together "defendants").  For the reasons

that follow, the Court grants the motion.

## I.  BACKGROUND

Plaintiff is a citizen of the People's Republic of China who has lawfully resided in

the United States since August 25, 2019, when he was admitted pursuant to an F-1 visa.

ECF Nos. 1 ¶ 8, 7 ¶ 2.  Plaintiff is currently enrolled as a full-time student in a master's

degree program in geographic information science and cartography at the University of Minnesota's Twin Cities campus.  ECF No. 7 ¶ 2.

ICE is responsible for administering the student visa program and tracking information on students in F-1 status through the Student and Exchange Visitor Program.  ECF No. 1 ¶ 13.  Under 8 U.S.C. § 1372, such students are tracked in an electronic record system known as the Student Exchange Visitor Information System ("SEVIS").  Plaintiff alleges that ICE takes the position that termination of a student's SEVIS account requires the student to immediately depart the United States.  ECF No. 1 ¶ 87.

During his time in the United States, plaintiff has twice received parking tickets and once been cited for speeding.  ECF No. 7 ¶¶ 6–7.  He has also been cited for driving with a suspended license, but that case was dismissed.  *Id.* ¶ 6.  Plaintiff paid all of the fines that were imposed as a result of these offenses, and he has never been subject to academic discipline.  *Id.* ¶¶ 7–8.

On April 8, 2025, ICE terminated plaintiff's student status in the SEVIS system.  ECF No. 8-4.  ICE identified the reason for the termination of his status as follows: "Individual identified in criminal records check and/or has had their VISA revoked.  SEVIS record has been terminated."  *Id.*  ICE did not inform plaintiff that his status had been terminated.  ECF No. 7 ¶ 9.  Instead, he learned about the termination of his SEVIS

status when the University of Minnesota sent him an email on April 8, 2025, notifying him of the change. *Id.* ¶ 9.

Plaintiff filed this action on April 14, 2025.[1]  ECF No. 1.  He brings three claims under the Administrative Procedure Act ("APA") and a claim for a declaratory judgment, contending that terminating his SEVIS status was contrary to the Immigration and Nationality Act and its implementing regulations, violated the Due Process Clause of the Fifth Amendment, and was arbitrary and capricious.  Plaintiff seeks injunctive as well as declaratory relief.

Plaintiff now moves for a TRO to temporarily enjoin defendants from terminating his status in the SEVIS system and to require defendants to set aside their termination decision.

## II. ANALYSIS

In considering a motion for a TRO, courts consider four factors:  "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest."  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981); *see also Tumey v. Mycroft AI, Inc.*, 27

---

[1]The Court notes that, just as this order was about to be docketed, plaintiff filed an amended complaint.  The allegations underlying the Court's conclusions, however, remain the same.

F.4th 657, 665 (8th Cir. 2022) ("[T]he standard for analyzing a motion for a temporary restraining order is the same as a motion for preliminary injunction.").  No one factor is determinative, and the court should "weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene."  *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999) (internal quotation marks omitted).  The moving party bears the burden to establish that these factors weigh in favor of granting temporary relief.  *See, e.g.*, *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

Here, based on the record now before the Court, the Court concludes that all four factors weigh in favor of granting plaintiff's requested TRO.

As to the first factor, the Court finds that plaintiff plainly faces irreparable harm. plaintiff is in the middle of the semester, for which he has already paid $17,739.23 in tuition.  ECF No. 7 ¶¶ 1, 18; ECF No. 8-2.  He is at imminent risk of being forced to drop his courses for this semester, and he is at risk of being prevented from registering for classes for next semester, as the University cannot allow him to proceed with his studies without an active student status on the SEVIS system.  ECF No. 7 ¶¶ 16–17.  More broadly, plaintiff faces the loss of the many years and many thousands of dollars he has invested in pursuing his degree.  *Id.* ¶ 14.  Because both the United States and the

University of Minnesota enjoy sovereign immunity, plaintiff may be unable to recover his financial losses.

In addition, plaintiff is now present in the United States with his legal status uncertain. This confusion about his legal status threatens imminent harm in at least two ways. First, it may subject him to immediate detention and deportation. *Id.* ¶ 10. Second, it causes him to accumulate unlawful presence in the United States, which is likely to impede or prevent him from becoming a permanent resident in the future. *Id.* ¶¶ 12, 13.

As to the second factor, the only apparent basis for defendants' action is plaintiff's history of minor traffic violations, the most recent of which took place in December 2023. ECF No. 7 ¶ 7. Enabling plaintiff to remain in status and continue his studies while the Court sorts through the legal issues in this case poses no plausible risk of injury to defendants.

As to the third factor, the Court finds on the basis of the current record that plaintiff is likely to succeed on the merits. Government agencies are generally required to follow their own regulations. *See, e.g.*, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954); *Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020). Plaintiff alleges that, when defendants terminated his status in the SEVIS system, they violated their own regulations and thereby violated the APA. *See* 8 C.F.R.

§ 214.1(d) (providing that termination of a non-citizen's nonimmigrant status may be accomplished by (1) revoking a waiver authorized on the non-citizen's behalf, (2) the introduction of a private bill to confer permanent-resident status on the non-citizen, or (3) a notification in the Federal Register on the basis of national security, diplomatic, or public-safety reasons).  Defendants do not appear to have terminated plaintiff's status pursuant to any of these three courses of action.  The record does not indicate that there was any relevant waiver to revoke.  Nor does the record reflect that a private bill for permanent residence has been introduced, or that any notification in the Federal Register has been published.

Finally, as to the fourth factor, the Court finds that there is a substantial public interest in ensuring that government agencies comply with federal law.  Indeed, the Court cannot imagine how the public interest might be served by permitting federal officials to flaunt the very laws that they have sworn to enforce.

For these reasons, the Court grants plaintiff's request for temporary relief and, in its discretion, the Court waives the bond requirement under Fed. R. Civ. P. 65(c).  The Court also finds good cause to issue this order without notice, as defendants took the challenged action without notice, giving rise to a real risk that plaintiff might be detained or deported without notice and before he can serve defendants.

-6-

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.  Plaintiff's motion for a temporary restraining order [ECF No. 4] is

    GRANTED.

    a.  Defendants are ORDERED to temporarily set aside their

        determination to classify plaintiff's F-1 student status as

        terminated.

    b.  Defendants are ORDERED to reinstate plaintiff's student status in

        the SEVIS system, backdated to April 8, 2025.

    c.  Defendants are temporarily ENJOINED from taking any further

        action to terminate plaintiff's student status.

    d.  Defendants are ENJOINED from directly or indirectly enforcing,

        implementing, or otherwise taking any action or imposing any

        legal consequences as the result of the decision to terminate

        plaintiff's SEVIS records, including revoking plaintiff's visa,

        detaining him, or deporting him.

2.  Plaintiff is ORDERED to serve defendants with the summons, complaint,

    motion papers, and a copy of this order as soon as possible.

-7-

3.     The Court will hold a hearing on Thursday, April 24, 2025, at 2:30 pm to

       consider whether to convert the TRO into a preliminary injunction.

       Defendants' brief in response to plaintiff's motion is due no later than

       Monday, April 21, 2025.  Plaintiff may file a reply no later than

       Wednesday, April 23, 2025.

4.     Pursuant to Fed. R. Civ. P. 65(b)(2), this order will expire 14 days from the

       date of entry unless the Court extends it for good cause shown or

       defendants consent to an extension.

Dated:  April 17, 2025, at 9:15 a.m.          s/Patrick J. Schiltz
                                              Patrick J. Schiltz, Chief Judge
                                              United States District Court